UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | No. 25-CR-164 (JMC) |
| **EMILY SOMMER** | : | |

## MOTION TO DISMISS INDICTMENT

Ms. Emily Sommer, through undersigned counsel, moves the Court to dismiss the Second Superseding Indictment filed against her charging her with three counts of assaulting a federal official in violation of 18 U.S.C. § 111(a)(1). Count 1 alleges that Ms. Sommer assaulted interim United States Attorney for the District of Columbia Edward R. Martin, Jr. on May 8, 2025. Count 2 alleges that Ms. Sommer assaulted United States Marshal Jeffrey Martin on May 22, 2025. Count 3 alleges that Ms. Sommer assaulted United States Marshal Megan Kirn on May 22, 2025. All three counts allege that Ms. Sommer made "physical contact with the victim" which elevates the charged acts from misdemeanors to felonies with an 8-year statutory maximum.

Ms. Sommer moves to dismiss the indictment because the alleged conduct does not amount to felony assault in violation of 18 U.S.C. § 111(a). In Count 1, the government's complaint asserts that Ms. Sommer approached Ed Martin while he was being interviewed by a reporter from NewsMax. The complaint purports that Ms. Sommer, after identifying Mr. Martin by name, "lunged at"[1] Ed Martin and "spit on" Ed Martin's "left shoulder." ECF No. 1-1. In Count 2, the indictment asserts that Ms. Sommer assaulted U.S. Marshall Jeffrey Martin, presumably by spitting. And Count 3 alleges that Ms. Sommer assaulted U.S. Marshal Megan

---

[1] Any alleged lunging cannot suffice to convict Ms. Sommer of felony assault in violation of § 111(a)(1) because the lunging did not result in "physical contact."

1

Kirn, presumably by touching Marshal Kirn's leg.[2]  These alleged "assaults" amounts to nothing more than offensive touching and, therefore, cannot support convictions under the felony provisions of § 111(a)(1).  The Indictment should be dismissed.

### I.     Motions to Dismiss an Indictment

The Court has the authority to grant a motion to dismiss where the evidence is undisputed and the determination regarding the sufficiency of the evidence is a legal question.  *See United States v. Nitschke*, 843 F. Supp. 2d 4, 8-9 (D.D.C. 2011).  The Federal Rules of Criminal Procedure require that an indictment must consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "When considering a motion to dismiss an indictment, a court assumes the truth of those factual allegations." *United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952)).  If, after assuming the truth of the factual allegations in the indictment and complaint, the elements of the offense have not been met, the Court must dismiss the indictment.

### II.    18 U.S.C. § 111(a)(1)

In general, Section 111(a)(1) proscribes forcibly "assault[ing], resist[ing], oppos[ing], imped[ing], intimidate[ing], or interfere[ing] with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1). A "person designated in section 1114" of Title 18 includes "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member

---

[2] The government has not specified exactly how Ms. Sommer is alleged to have assaulted Marshals Martin or Kirn. The contemporaneously filed Motion for Bill of Particulars seeks to resolve this lack of information. Regardless, from representations made off the record and counsel's review of the discovery, it appears the alleged assaults involve spitting and a touch to Marshal Kirn's leg.

of the uniformed services) … or any person assisting such an officer or employee." 18 U.S.C. § 1114. When such "acts constitute only simple assault" the crime is a misdemeanor, punishable by "not more than one year" imprisonment. "[W]here such acts involve physical contact with the victim of the that assault or the intent to commit another felony," the offense is transformed into a felony punishable by "not more than 8 years" imprisonment.

There are, in effect, three categories of violations of § 111(a)(1). The first category which includes "acts in violation of the statute that "constitute only simple assault." This category of offenses is a misdemeanor. The second and third categories are both felonies with a statutory maximum of eight years imprisonment. The second category includes "acts in violation of the statute [that] "involve physical contact with the victim of that assault"; and the third encompasses "acts in violation of the statute that involve … the intent to commit another felony." *United States v. Cua*, 657 F. Supp. 3d 106, 113 (D.D.C. 2023).

All three categories must be committed "forcibly" to constitute a violation of § 111(a)(1). "[I]n one of its few discussions of (a prior version of) § 111(a), the D.C. Circuit assumed that each verb listed in § 111 stands on its own: as the court explained, "the adverb 'forcibly' in the first element of the offense modifies *each of the prohibited acts* specified in the second element." *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) (emphasis added); *see also id.* ("[T]hat is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc.")." *Cua*, 657 F. Supp. 3d at 112 (emphasis added).

### III. Spitting on an Officer is not "forcible" "assault" with "physical contact."

The government has charged Ms. Sommer with two felony violations of § 111(a)(1) asserting that Ms. Sommer spat on Mr. Edward Martin and Mr. Jeffrey Martin. But because a violation of § 111(a)(1) must be committed "forcibly," the physical contact must rise to a level

higher than mere offensive touching such as spitting or touching a leg.  Because spitting is considered offensive touching, *Johnson v. United States*, 559 U.S. 133 (2010) (Alito & Thomas, JJ, dissenting) (describing spitting as offensive touching), the elements of § 111(a)(1) are not satisfied even if all of the government's allegations are accepted as true.  Counts 1 and 2, therefore, must be dismissed.[3]

The conclusion that offensive touching cannot satisfy felony § 111(a)(1) assault is required by the combination of two canons of statutory interpretation.  First, courts have an "obligation to give meaning where possible to each word and provision of the" United States Code.  *Fischer v. United States*, 603 U.S. 480, 493 (2024).  The presumption is that Congress intentionally included each word of a statute and that no word is included in a statute to serve no purpose at all.  Doing so requires courts to consider each word along with the "surrounding words."  *Id.* at 486.  "Adhering to the *fair meaning* of the text (the textualist's touchstone) does not limit one to the hyperliteral meaning of each word in the text."  Scalia & Garner at 356.  "If the usual evidence indicates that a statutory phrase bears an ordinary meaning different from the literal strung-together definitions of the individual words in the phrase, we may not ignore or gloss over that discrepancy.  Legislation cannot sensibly be interpreted by stringing together dictionary synonyms of each word."  *Bostock v. Clayton County*, 590 U.S. 644, 788 (2020) (Kavanaugh, J., dissenting).

Second, the canon against surplusage requires finding that offensive touching cannot amount to felony § 111(a)(1) assault.  "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."  *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001)

---

[3] Count 3 which concerns Ms. Sommer allegedly touching Ms. Kirn's leg should be dismissed for the same reason.  This is nothing more than offensive touching and cannot meet the elements of felonious § 111(a)(1) assault.

(quotation marks omitted). The "courts regularly apply the canon of surplusage to serious criminal laws without fear of loosening statutory belts and suspenders." *Vertex Pharms. Inc. v. United States Dep't of Health & Hum. Servs.*, 774 F. Supp. 3d 211, 225 (D.D.C. 2025).

Applying the obligation to give meaning to each word of the statute with the canon against surplusage requires reading the felony provision of § 111(a)(1) as requiring more than mere offensive touching to be committed.

Ms. Sommer is charged with the felony provision of § 111(a)(1) which requires that she both "forcibly" assault a federal official and that the assault "make physical contact" with the victim. At first glance, the requirements that the assault be both "forcibly" done *and* the conduct "make physical contact" are dangerously close to redundancy. The most natural reading of both requirements is that a physical action must be undertaken against the victim of the assault. But "forcibly" and "physical contact" cannot have the same meaning. Giving both requirements independent meaning, therefore, makes clear that the "forcibly" requirement must be a requirement that the alleged conduct amount to more than mere offensive touching.

Assessing the two requirements separately is instructive before considering them as a whole.

***Physical contact.*** The requirement that the assaultive conduct make physical contact with the victim appears to be rather straight forward. This provision likely means exactly what it says— the assaultive conduct must physically touch the victim of the alleged assault. The requirement that the conduct be "physical" removes any verbally or emotionally assaultive behavior from the gambit of § 111(a)(1); *see Johnson*, 559 U.S. at 138 ("The adjective 'physical' is clear in meaning …."). Verbally threatening another, which can amount to assault under common law, therefore, will not suffice for a felony violation of § 111(a)(1) in any of the three categories. The requirement

5

that the assaultive conduct make "physical contact" with the victim is equally plain. The assaultive conduct must actually land on the victim's person. For example, if a defendant threw a punch at a federal official but failed to connect, the physical contact requirement would not be met. But if the punch landed on the official's jaw, the physical contact requirement has been met. To be sure, the physical contact requirement does not mandate that the contact be direct, person-to-person contact. Indirect contact, such as by throwing an object, can meet this requirement as well. *United States v. Castleman*, 572 U.S. 157, 170 (2014). So, if a defendant threw a tomato at a federal official and missed, the contact requirement would not be met. If the tomato struck the official's back, then the physical contact requirement is met. This is rather intuitive. There is no room to interpret the physical contact requirement in any other way.

  ***Forcibly.*** The requirement that the assaultive conduct be done "forcibly" is not so plain. Forcibly, or "force" can have "a number of meanings." *Johnson*, 559 U.S. at 138. The Supreme Court has discussed three very different meanings of the word "force" when interpreting a statute. "Force" could refer to the meaning in the field of physics, "a cause of acceleration of mass." *Id.* at 139 (quoting Webster's New International Dictionary 986 (2d ed. 1954)). Or it could take on its more general meaning, "'[s]trength or energy; active power; vigor; often an unusual degree of strength or energy,' '[p]ower to affect strongly in physical relations,' or '[p]ower, violence, compulsion, or constraint exerted upon a person." *Id.* (quoting Webster's Second at 985). Black's Law Dictionary "defines 'force' as '[p]ower, violence, or pressure directed against a person or thing.'" *Id.* (quoting Black's Law Dictionary 717 (9th ed. 20009). Finally, there is "a more specialized legal usage of the word "force": its use in describing one of the elements of the common-law crime of battery, which consisted of the intentional application of unlawful force against the person of another." *Id.* This common-law definition of force could be satisfied by

6

"even the slightest offensive touching." *Id.*; *see also United States v. Castleman*, 572 U.S. 157, 162-63 (2014) ("Seeing no 'other indication' here, we hold that Congress incorporated the common-law meaning of 'force'—namely, offensive touching—in § 921(a)(33)(A)'s definition of a 'misdemeanor crime of domestic violence.'"). The question then is which of these three definitions of force applies in § 111(a)(1).

The common law definition of force, *i.e.* offensive touching, cannot apply here. "Although a common-law term of art should be given its established common-law meaning," courts "do not assume that a statutory word is used as a term of art where the meaning does not fit." *Johnson*, 559 U.S. at 139. "Ultimately, context determines meaning." *Id.* (citing *Jarecki v. G.D. Searle & Co,* 367 U.S. 303, 307 (1961)). Statutes should not be read, therefore, in ways where they "produce nonsense." *Id.*

The common law meaning of "force" does not fit in § 111(a)(1) because it would add nothing to the statute that is not already accomplished by the physical contact requirement. The physical contact requirement is satisfied by even the slightest touch of the victim's person. So, too, would be the "forcibly" requirement if "force" is given its common law meaning. Force, therefore, must be given a meaning other than the common law meaning of offensive touching so that the two requirements serve two different functions.

When a common law term of art does not apply, courts assign words in a statute their everyday meaning. *United States v. Alford*, 89 F.4th 943, 949 (D.C. Cir. 2024). And the everyday meaning of "force" calls to mind strength, energy, vigor, power, violence, compulsion—"often an unusual degree of strength or energy." *Johnson*, 559 U.S. at 139. Clearly, offensive touching cannot satisfy the "forcibly" requirement which mandates that the assaultive conduct be powerful, energetic, strong, vigorous, or even violent.

7

The Supreme Court has confronted the question of what degree of force is necessary to satisfy the everyday term as used in the Armed Career Criminal Act (ACCA). In *Johnson*, the Court was called to interpret the meaning of "force" in the provision defining a "crime of violence" which must have as an element the 'use of physical *force* against the person of another." 18 U.S.C. § 924(e) (emphasis added). The government asked the Court to give "force" its common law meaning which would have permitted offenses which could be committed by the slightest physical contact to qualify as a crime of violence. The Court rejected this interpretation, finding that the context of the entire statute required finding that "force" meant *violent* force which could not be satisfied by mere offensive touching. *Johnson*, 559 U.S. at 140.

The same must be true here. Because the common law definition of force would be duplicative of the physical contact requirement, the word force must mean something greater than mere offensive touching. Perhaps the level of force necessary to satisfy § 111(a)(1) is not necessarily the "violent force" contemplated in the ACCA's definition of a crime of violence, *see United States v. Camargo*, Case No. 1:21-cr-70 (ABJ), ECF No. 114 (D.D.C. Oct. 31, 2023) (finding that § 111(a)(1) did not require a showing of violent force equal to that of ACCA), but it is certainly still greater than that of mere offensive touching.

Moreover, when the requirements for the actual assaultive conduct and "physical contact" are considered together, they mandate that "forcibly" require more than mere offensive touching. Common law assault is "a crime, *not involving touching*, 'committed by either a willful attempt to inflict injury upon the person of another, or by threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Davis*, 690 F.3d 127, 1387 (2d Cir. 2012). Once an assault involves physical contact of any kind, it transforms into a battery. *See* 2 W. LaFave & A.

8

Scott, Substantive Criminal Law § 7,15(a), p. 301 (1986 and Supp. 2003). Because a battery already requires physical contact, the requirement that the battery be committed "forcibly" clearly requires that the assaultive conduct be something beyond mere touching. Otherwise, the word "forcibly" would again serve no purpose in the statute.

Incorporating the common law definitions of assault and battery without requiring a higher degree of force is similarly nonsensical in light of the punishments attached to a forcible assault making physical contact in § 111(a)(1). At common law, both assault and battery are punishable as misdemeanors only. 2 W. LaFave, Substantive Criminal Law § 16.1(a) (3d ed.). And this is still generally true today. *Id.* An assault making physical contact under § 111(a)(1), however, is a serious felony, punishable by up to eight years. At common law, only aggravated assaults and batteries—like mayhem (which required a dismemberment-type injury), rape, and the unlawful taking of property by violence—qualified as felonies. *Id.* § 16.1(b). Therefore, the assaultive conduct required to commit a felony under § 111(a)(1) must be more comparable to the conduct required for aggravated assault or aggravated battery. Mere offensive touching cannot suffice.

The Counts charging Ms. Sommer with felony assault under § 111(a) due to mere offensive touching, *i.e.* spitting and touching another's leg, therefore must be dismissed.

> Respectfully submitted,
>
> A. J. KRAMER
> FEDERAL PUBLIC DEFENDER
>
> */s/ Diane Shrewsbury*
> Diane Shrewsbury
> Alexis Morgan Gardner
> Assistant Federal Public Defenders
> 625 Indiana Avenue, N.W., Suite 550
> Washington, D.C. 20004
> (202) 208-7500

9